UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
ALFREDO GONZALEZ,                   :      09 Civ. 3834 (JCF)
                                    :
            Petitioner,             :      MEMORANDUM
                                    :      AND   ORDER
    - against -                     :
                                    :
SUPERINTENDENT WILLIAM CONNOLLY,    :
                                    :
            Respondent.             :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

    Alfredo Gonzalez brings this petition for a writ of habeas
corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for
criminal possession of a controlled substance in the third and
fourth degrees following a jury trial in the County Court, Orange
County.  Mr. Gonzalez contends that (1) evidence introduced against
him at trial was obtained in violation of his Fourth Amendment
rights, (2) his due process rights were violated when the trial
court failed to order an updated evaluation of his competency to
stand trial, (3) he was denied effective assistance of counsel, and
(4) improper comments by the prosecutor during summation denied him
the right to a fair trial.  The parties agreed that I would
exercise jurisdiction for all purposes including final disposition
pursuant to 28 U.S.C. § 636(c).  For the reasons that follow, the
petition is denied.

Background

    A. <u>The Crime</u>

On March 15, 2002, the petitioner was present in the apartment of his friend, Joseph Gibbs, in the City of Port Jervis, where the two of them had been smoking crack cocaine. (H. at 7, 48, 55-57; Tr. at 219).[1] The apartment was situated in the basement of a multifamily building. (H. at 31). At approximately 11:00 p.m., City of Port Jervis Police executed a no-knock search warrant at the premises. (H. at 7, 16-17, 22, 32-33; Tr. at 151, 155, 159, 165, 187-88, 213). They found Mr. Gibbs in the hallway between the bathroom and a bedroom. (H. at 7, 47; Tr. at 152). Mr. Gonzalez was sitting on a couch in the living room where the television was on. (H. at 7-8, 17-18, 23, 33-34; Tr. at 152, 155-56, 160, 166). He was fully clothed and wearing shoes. (H. at 18, 23, 34; Tr. at 160).

When the police searched the apartment, they did not locate any personal items belonging to the petitioner. (H. at 11, 18, 36-37). They did, however, discover $232 in currency in the petitioner's pocket and two bags of crack cocaine underneath the pillows on the couch where he had been sitting. (H. at 24, 28, 51; Tr. at 160-62, 167-68, 189-90). The cocaine appeared to be packaged for sale, as the two bags each contained numerous smaller

---

[1] "H." refers to the transcript of a hearing on the petitioner's motion to suppress certain evidence; "Tr." refers to the trial transcript.

packets of crack. (H. at 24; Tr. at 144, 163, 167-68, 176-77). When the police showed Mr. Gonzalez the cocaine, he denied that it was his and stated that he was just leaving. (H. at 24, 28; Tr. at 170). This conversation was conducted in English. (H. at 28-29; Tr. at 170).

Mr. Gonzalez was arrested and taken to the Port Jervis police station where a detective read him the Miranda warnings. (H. at 36-38; Tr. at 196-98). Then, in order to determine if the petitioner understood English, the detective had him read a portion of the warnings out loud. (H. at 43-44). Thereafter, Mr. Gonzalez agreed to answer questions and ultimately produced a four-page statement. (H. at 38-39, 60; Tr. at 200). In the statement, the petitioner admitted that the cocaine in the couch was his and stated that he sold a little and used a little. (Tr. at 202-03). He said that he had taken the train to Paterson that night, where he bought the crack for $300 before selling five or ten rocks. (Tr. at 203-04). Of the money found in his pocket, about $80 had come from selling crack. (Tr. at 204-05).

B. The Prosecution

On April 22, 2002, the grand jury returned an indictment against Mr. Gonzalez and Mr. Gibbs. Both were charged with Criminal Possession of a Controlled Substance in the Third Degree in violation of New York Penal Law § 220.16(1) and Criminal Possession of a Controlled Substance in the Fourth Degree in

violation of Penal Law § 220.09(1). (Indictment No. 2002-384 ("Indictment"), Exh. 1 of Respondent's Record of Exhibits ("Resp. Rec.")). Additionally, Mr. Gibbs was accused of Possession of a Controlled Substance in the Seventh Degree in violation of Penal Law § 220.03. (Indictment). Mr. Gibbs subsequently pled guilty to this last charge; he agreed to cooperate with the prosecution and was sentenced to time served. (Brief for the Respondent, submitted to the Appellate Division, Second Department ("Resp. App. Brief"), Exh. 9 of Resp. Rec., at 3 n.1).

After the indictment was returned, the court, at the request of defense counsel, ordered a mental examination of Mr. Gonzalez pursuant to New York Criminal Procedure Law § 730.30. (Appellant's Brief, submitted to the Appellate Division, Second Department ("Pet. App. Brief"), Exh. 8 of Resp. Rec., at 21). On the basis of that examination, the court found Mr. Gonzalez fit to stand trial. (Pet. App. Brief at 21).

As the case proceeded, Mr. Gonzalez's attorney made an omnibus motion that included an application to suppress the petitioner's statements as well as the narcotics that were recovered, arguing that this evidence was the fruit of an unlawful search. (Notice of Motion and Affidavit of Alex Smith dated July 26, 2002, Exh. 2 of Resp. Rec.). In a supplemental submission, counsel contended that as an overnight guest of Mr. Gibbs, the petitioner had a reasonable expectation of privacy in the apartment and therefore had standing

4

to challenge the legality of the search.  (Supplemental Affidavit of Alex Smith dated Aug. 23, 2002 ("Smith Supp. Aff."), Exh. 5 of Resp. Rec.).  This contention was supported with the petitioner's affidavit, in which he attested:

> On March 15-16, 2002, I was sleeping on the couch in Mr. Gibbs' living room.  I was already asleep on the couch with a pillow and blanket when the police broke the door down.  The police yanked me off the couch, struck me, and then searched the couch I had been sleeping on.  Gibbs was sleeping in another room.

(Affidavit of Alfredo Gonzalez dated Aug. 15, 2002, attached to Smith Supp. Aff., ¶ 1).

The Honorable Nicholas De Rosa, the presiding County Court Judge, held a hearing on the petitioner's suppression motion. During that proceeding, the prosecution presented testimony about the circumstances of the search and Mr. Gonzalez's arrest, as described above.  The petitioner testified on his own behalf.  He related that on the night in question he visited Mr. Gibbs, and they agreed that he would stay overnight because they were drinking and smoking crack.  (H. at 48-49).  When Mr. Gibbs retired to the bedroom, Mr. Gonzalez went to sleep on the couch in the living room.  (H. at 49).  According to the petitioner, and contrary to the testimony of the police witnesses, the lights and television were off, and he was sleeping with a blanket and pillow.  (H. at 49-50).  Mr. Gonzalez testified that when he was awoken by the police, he initially denied selling drugs, but then made false admissions when one of the officers punched him.  (H. at 51-52).

He further stated that he did not understand the written statement that he signed at the police station.  (H. at 52-55).

Judge De Rosa issued an oral decision at the close of the hearing, in which he credited the testimony of the police officers to the extent that it conflicted with that of Mr. Gonzalez.  For example, Judge De Rosa noted that there was no corroboration of Mr. Gonzalez's assertion that he was a guest: "there was no luggage no overnight bag, no tooth brush, nothing, no cots, no pillows, no blankets."  (H. at 79).   Judge De Rosa concluded that "[t]he mere fact that the defendant feels as if he's going to nod out on someone's couch after ingesting alcohol or crack doesn't give that person standing as an overnight guest, or any other type of standing."  (H. at 78-79).  Accordingly, Judge De Rosa denied the motion to suppress.

The case proceeded to trial before a jury, and the parties presented substantially the same evidence that they had at the suppression hearing.  At the close of the case, the jury found Mr. Gonzalez guilty on both counts.  Judge De Rosa subsequently sentenced the petitioner as a second felony offender to an indefinite term of imprisonment of from eight to sixteen years on the charge of criminal possession of a controlled substance in the third degree and a term of from seven to fourteen years on the charge of criminal possession of a controlled substance in the fourth degree, the sentences to be served concurrently.  (Resp.

App. Brief at 2-3).

    C. <u>Post-Trial Proceedings</u>

    Mr. Gonzalez appealed, asserting essentially the same claims that he now raises in his habeas petition: (1) that he was wrongly denied standing to challenge the search, (2) that he should have received an updated competency examination, (3) that he was denied effective assistance of counsel, and (4) that the prosecutor committed misconduct during summation.

    On November 13, 2007, the Appellate Division, Second Department issued a decision rejecting these arguments and affirming Mr. Gonzalez's conviction. <u>People v. Gonzalez</u>, 45 A.D.3d 696, 845 N.Y.S.2d 817 (2d Dep't 2007). The court found, first, that the suppression motion had been properly denied because Mr. Gonzalez had not established that he was more than a casual visitor and therefore lacked standing to contest the search. <u>Id.</u> at 696, 845 N.Y.S.2d at 818. Next, the court held that the petitioner's challenges to the prosecutor's summation had not been preserved for review and, even if they had, they were without merit, since the prosecutor's statements "constituted fair comment on or reasonable inferences drawn from the evidence, or were harmless error." <u>Id.</u> at 696-97, 845 N.Y.S.2d at 818. Third, the court deemed the claim of ineffective assistance of counsel to be meritless. <u>Id.</u> at 697, 845 N.Y.S.2d at 818. Finally, the court summarily rejected the argument that Mr. Gonzalez was entitled to a further review of his

competency.  Id. at 697, 845 N.Y.S.2d at 819.

The petitioner then sought leave to appeal to the New York Court of Appeals, reasserting the same four claims he had raised in the Appellate Division.  (Letter of Warren S. Hecht dated Dec. 18, 2007, part of Exh. 12 of Resp. Rec.).  That application was denied on March 31, 2008.  People v. Gonzalez, 10 N.Y.3d 811, 857 N.Y.S.2d 44 (2008) (Table).

Mr. Gonzalez then submitted the instant petition.

Discussion[2]

A. Unlawful Search

Mr. Gonzalez first claims that he was convicted on the basis

---

[2] Prior to passage of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), factual findings made by a state court after an evidentiary hearing were presumed correct in a federal habeas proceeding, but federal courts were not required to defer to state court determinations of law and of mixed questions of law and fact.  See Thompson v. Keohane, 516 U.S. 99, 107-12 (1995); Brown v. Artuz, 283 F.3d 492, 497 (2d Cir. 2002).  Under the AEDPA, however, a writ of habeas corpus may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The AEDPA standard applies to this case since Mr. Gonzalez filed his petition after the Act's effective date.  See Brown, 283 F.3d at 498 n.2.  However, where, as here, the petitioner's claims fail under the less deferential pre-AEDPA standard, there is no need to conduct the AEDPA's more intricate analysis.  Cf. Kruelski v. Connecticut Superior Court for the Judicial District of Danbury, 316 F.3d 103, 106 (2d Cir. 2003) (suggesting, in post-AEDPA cases, that habeas courts should assess first whether state court's ruling was erroneous under the "correct interpretation" of federal law at issue, then whether the ruling was unreasonable).

of evidence that was obtained in violation of his Fourth Amendment right not to be subjected to an unreasonable search.  In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494.  Thus, a Fourth Amendment claim may not be reviewed in a habeas petition unless the petitioner "was denied an opportunity for a full and fair litigation of that claim at trial and on direct review."  Id. at 494 n.37.  Generally, a petitioner will have been denied an opportunity to litigate only "(1) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (2) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).  It is well-settled that New York's procedure for litigating Fourth Amendment claims is constitutionally adequate. Id. at 70 n.1.

Mr. Gonzalez acknowledges the obstacle that Stone poses to review of his Fourth Amendment claim.  Nevertheless, he argues that the state process for review of such claims broke down in this instance because he was improperly denied standing; consequently,

he contends, his challenge to the search may be reviewed on habeas. (Memorandum of Law ("Pet. Memo.") at 4-8).

The respondent maintains that the petitioner's claim is unexhausted and, because it can no longer be reviewed by the state courts, procedurally defaulted. (Respondent's Memorandum of Law ("Resp. Memo.") at 13-15). Under federal law, a petitioner must exhaust all available state court remedies for each claim prior to seeking federal habeas review. 28 U.S.C. § 2254(b)-(c). Exhaustion requires that the factual and legal basis for each claim be fairly presented to the highest available state court. Daye v. Attorney General of the State of New York, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). For a claim to be fairly presented, it must be articulated in federal constitutional terms sufficient to alert the state court to the federal nature of the claim. See id. at 191-92; Davis v. Strack, 270 F.3d 111, 122 (2d Cir. 2001); Reid v. Senkowski, 961 F.2d 374, 376 (2d Cir. 1992). However, a claim may be deemed exhausted by a federal court for purposes of habeas review if it is clear that the state court would find the claim defaulted. Gray v. Netherland, 518 U.S. 152, 161 (1996); Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 170 (2d Cir. 2000); Bossett v. Walker, 41 F.3d 825, 828-29 (2d Cir. 1994). The same procedural default bars the court from reaching the merits of the claim. Bossett, 41 F.3d at 829.

Mr. Gonzalez consistently contested the search in this case as

a violation of his Fourth Amendment rights.   Nevertheless, the respondent argues that the petitioner

> never claimed in any state court proceeding nor established that the state court denied him the ability to litigate his Fourth Amendment claims in the state courts or more precisely that there was an "unconscionable breakdown of process," the sole applicable exception to the bar on further review of his Fourth Amendment claims by the habeas court.

(Resp. Memo. at 14).   Therefore, according to the respondent, Mr. Gonzalez's claim is unexhausted.

This rationale is puzzling.   The exhaustion requirement mandates that to be cognizable on habeas, a claim must first have been presented to the state courts.   It does not obligate the petitioner to anticipate and rebut in state court all defenses that the respondent could assert to a habeas corpus petition that might later be filed in federal court.   Indeed, this case illustrates why such a requirement would make little sense.   Stone v. Powell does not bar the consideration of Fourth Amendment claims in state court, and there would therefore be no occasion for a criminal defendant to argue in state court why an exception to the Stone doctrine exists.   The issue simply would not arise until a federal habeas petition is filed and the respondent relies on Stone.   Mr. Gonzalez's Fourth Amendment claim is therefore fully exhausted and not procedurally defaulted.

It is also, however, barred from consideration by Stone.   In Rakas v. Illinois, 439 U.S. 128 (1978), the Supreme Court observed

that the question of whether an individual has rights enforceable under the Fourth Amendment is not truly a threshold standing issue. Id. at 138-40.   Rather, "the definition of [Fourth Amendment] rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing."   Id. at 140. In short, "[a]ny theoretical distinction between standing to raise a Fourth Amendment claim and the merits of that Fourth Amendment claim is illusory."   Terry v. Martin, 120 F.3d 661, 664 (7th Cir. 1997).

> Accordingly, a state court determination that a defendant has no standing to raise a Fourth Amendment claim is a resolution on the merits of his claim and may trigger the Stone bar to habeas relief if the state court reaches this determination after affording the prisoner a full and fair opportunity to litigate his claim.

Id.   Although the Second Circuit does not appear to have addressed this issue explicitly, the Seventh and Eighth Circuits have, and they are in agreement on this principle.   See Travis v. Norris, 306 Fed. Appx. 334, 335 (8th Cir. 2009); Terry, 120 F.3d at 664; see also Varner v. Stovall, No. Civ. 04-60210, 2006 WL 148757, at *9 (E.D. Mich. Jan. 18, 2006).   Furthermore, district courts within this circuit have at least implicitly adopted this reasoning, refusing to review Fourth Amendment claims in light of Stone where the state courts rejected those claims for lack of standing or, more precisely, for lack of an enforceable privacy interest.   See Nunez v. Duncan, No. 01 CV 4068, 03 MISC 0066, 2003 WL 22284182, at *10 (E.D.N.Y. Aug. 20, 2003); Carmona v. Attorney General of the

State of New York, No. 96 Civ. 8045, 1997 WL 876737, at *8
(S.D.N.Y. Oct. 7, 1997).

I, too, find this reasoning persuasive, and it is fully
applicable in this case.  Mr. Gonzalez contests the state court
determinations simply on the basis that they wrongly decided the
standing issue.  He does not in any way contend that he was
deprived of a full and fair opportunity to litigate that issue.
Therefore, his Fourth Amendment claim is barred from review by
Stone.

    B. Competency

Next, Mr. Gonzalez contends that, even though he had been
found competent prior to his suppression hearing, he should have
been provided an updated competency evaluation prior to trial.
Subjecting an incompetent person to trial violates the Due Process
Clause of the Fourteenth Amendment.  Medina v. California, 505 U.S.
437, 453 (1992) (citing cases).  In particular, "the failure to
observe procedures adequate to protect a defendant's right not to
be tried or convicted while incompetent to stand trial deprives him
of his due process right to a fair trial."  Drope v. Missouri, 420
U.S. 162, 172 (1975).  "[I]n the event a sufficient doubt exists,"
the trial court must conduct an inquiry into the defendant's
competence.  Pate v. Robinson, 383 U.S. 375, 387 (1966); Smith v.
Rock, 554 F. Supp. 2d 505, 519 (S.D.N.Y. 2008), aff'd, 344 Fed.
Appx. 656 (2d Cir. 2009).

Habeas relief must be granted when doubt regarding a defendant's competence existed at trial and the trial court failed to order -- on its own motion, if necessary -- an inquiry into the defendant's fitness for trial. Pate, 383 U.S. at 369, 387 ("In the event a sufficient doubt exists . . . such a hearing must be held."); Silverstein v. Henderson, 706 F.2d 361, 369 (2d Cir. 1983) ("[T]he trial court must order a hearing when there is reasonable ground for believing that the defendant may be incompetent to stand trial.") (emphasis added and internal quotation marks omitted); Smith, 554 F. Supp. 2d at 519. A finding of competence early in the pendency of a case does not absolve the court of its obligation: "[e]ven when a defendant is competent at the commencement of his trial," the court must remain vigilant to evidence suggesting the emergence of incompetence. Drope, 420 U.S. at 181.

Here, Mr. Gonzalez's claim fails because he does not point to any evidence that Judge De Rosa had any doubts about his competency. Nor has the petitioner identified any behavior on his part at any point during the prosecution that reasonably should have alerted the court to the possibility that his mental status had deteriorated after he was initially found competent.[3] There is

_____

[3] In his submission to the Appellate Division, Mr. Gonzalez argued that his lack of competence was evident from: (1) his refusal to accept a desirable plea offer; (2) his attorney's comments to the judge that he had a difficult time comprehending the sentence he was facing; and (3) his decision not to remain in

14

simply no due process right to a competency hearing absent some indication that the criminal defendant's ability to understand the proceedings and assist his lawyer is reasonably in doubt.

C. Assistance of Counsel

The petitioner contends that he was denied effective assistance of counsel because his attorney (1) failed to "probe" the fact that he was only charged with possession of narcotics despite the fact that the search warrant was based on an allegation that drugs were being sold from the subject premises, (2) failed to protect Mr. Gonzalez's right to testify before the grand jury, and (3) failed to conduct adequate cross examination of the police officers at trial.

In order to make out an ineffective assistance of counsel claim, the petitioner must demonstrate that (1) his counsel's performance was deficient and (2) the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); accord Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). In assessing whether an attorney's performance was deficient, a reviewing court must determine whether her conduct "fell below an objective standard of reasonableness," given the facts and circumstances of the particular case. Strickland, 466 U.S. at 688.

---

the courtroom during the trial. (Pet. App. Brief at 22-23). These actions on the part of the petitioner are simply not aberrational enough to have alerted the trial judge to any need for an additional competency hearing.

The court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  The "prejudice" prong of the Strickland test requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," id. at 687, and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  Although Strickland establishes a two-part test, a court need not necessarily address both prongs. Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id. at 697.

       1. Charging Decision

    Mr. Gonzalez first claims ineffective representation based on his attorney's failure to challenge the prosecutor's charging decision: the determination to charge possession rather than sale of narcotics.  The respondent argues, in part, that this claim is unexhausted and procedurally defaulted.  In order to exhaust a claim of denial of effective assistance of counsel, a petitioner must have presented to the state courts the same factual predicate that he advances as the basis for his habeas claim.  Ramirez v. Attorney General of State of New York, 280 F.3d 87, 96 (2d Cir. 2001); Diaz v. Conway, No. 04 Civ. 5062, 2008 WL 2461742, at *13 (S.D.N.Y. June 17, 2008); Castillo v. Walsh, 443 F. Supp. 2d 557,

566-67 (S.D.N.Y. 2006). Here, Mr. Gonzalez never alleged in state court that his attorney should have challenged the prosecutor's charging decision.   Therefore, this prong of the petitioner's ineffective assistance claim is indeed unexhausted.

It is not, however, procedurally defaulted.  The respondent suggests that Mr. Gonzalez has no further recourse in state court. This would indeed be true if the facts underlying his ineffective assistance claim had been fully developed on the record; in that case, the petitioner's failure to assert the claim as part of his direct appeal would constitute a procedural default barring habeas review.   See Murden v. Artuz, 497 F.3d 178, 196 (2d Cir. 2007); Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003); Aessa v. Annets, No. 06 CV 5830, 2009 WL 163251, at *6-7 (E.D.N.Y. June 10, 2009).   But where a claim of inadequate representation requires further factual development as, for example, when it is based on an allegation of insufficient investigation, it is appropriate to raise it in a collateral proceeding, which in New York is a motion to vacate the judgment of conviction pursuant to Criminal Procedure Law § 440.10.  See Murden, 497 F.3d at 196; Sweet, 353 F.3d at 139; Aessa, 2009 WL 163251, at *6.  This is such a case: to the extent that Mr. Gonzalez argues that the prosecutor made an improper charging decision and his attorney failed to challenge it, the facts underlying both the prosecutor's choice and the defense counsel's strategy would require further development.  Thus, this

claim, while unexhausted, is not procedurally defaulted.

Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). An unexhausted claim may be denied if it is "patently frivolous" and "[does] not raise even a colorable federal claim." See Ortiz v. Marshall, No. 08 Civ. 8815, 2009 WL 3170300, at *5 & n.3 (S.D.N.Y. Sept. 30, 2009); Tavarez v. New York, No. 07 Civ. 8673, 2008 WL 2775810, at *8 (S.D.N.Y. July 14, 2008); Ramos v. New York, No. 06 Civ. 3886, 2007 WL 1334969, at *6 (S.D.N.Y. May 8, 2007); Hernandez v. Lord, No. 00 Civ. 2306, 2000 WL 1010975, at *4 & n.8 (S.D.N.Y. July 21, 2000). Here, Mr. Gonzalez's claim is plainly frivolous. It is well-settled that "[w]hether to prosecute and what charge to file or bring before the grand jury are decisions that generally rest in the prosecutor's discretion." United States v. Batchelder, 442 U.S. 114, 124 (1979) (citing cases); accord United States v. Snype, 441 F.3d 119, 141 (2d Cir. 2006) ("A criminal defendant has no constitutional right to be prosecuted under any particular statute.") (internal quotation marks and citation omitted); Farr v. Greiner, No. 01 CV 6921, 2007 WL 1094160, at *29 (E.D.N.Y. April 10, 2007). Since Mr. Gonzalez asserts no proper basis for challenging the prosecutor's exercise of discretion in the charging decision, his attorney was not ineffective for failing to mount such a defense.

18

2. <u>Right to Appear Before the Grand Jury</u>

Next, Mr. Gonzalez argues that his attorney failed to secure his right to testify before the grand jury.  Assuming that the petitioner had such a right and that his right was violated, he suffered no prejudice because his conviction by the petit jury on proof beyond a reasonable doubt cures any alleged defects in the grand jury proceedings.  <u>See</u> <u>United States v. Mechanik</u>, 475 U.S. 66, 70 (1986); <u>King v. Greiner</u>, No. 02 Civ. 5810, 2008 WL 4410109, at *47-48 (S.D.N.Y. Sept. 26, 2008); <u>Verdel v. Miller</u>, No. 05 Civ. 1997, 2008 WL 463777, at *7 (S.D.N.Y. Feb. 19, 2008); <u>Turner v. Fischer</u>, No. 01 CV 3251, 2003 WL 22284177, at *6 (E.D.N.Y. Aug. 20, 2003).  Thus, this claim of ineffective assistance fails as well.

3. <u>Cross Examination</u>

Mr. Gonzalez also contends that his attorney failed to conduct adequate cross examination of the police witnesses.  In the memorandum that he submitted in this proceeding, the petitioner complains that the cross examination of nine witnesses consumed only nineteen pages of trial transcript.  (Pet. Memo. at 13).  In addition, in his brief on direct appeal, Mr. Gonzalez argued that trial counsel had failed to probe inconsistencies between the testimony that officers gave at trial and their testimony during the suppression hearing.  (Pet. App. Brief at 27-29).

"Decisions about 'whether to engage in cross-examination, and

if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an ineffective assistance claim." Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002) (quoting United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987)); accord Lavayen v. Duncan, 311 Fed. Appx. 468, 471 (2d Cir. 2009); Beard v. Unger, No. 06 CV 0405, 2009 WL 5042696, at *5 (W.D.N.Y. Dec. 15, 2009); Silva v. Miller, No. 04 Civ. 8013, 2009 WL 4060946, at *9 (S.D.N.Y. Nov. 24, 2009); Arkin v. Bennett, 282 F. Supp. 2d 24, 37 (S.D.N.Y. 2003).   Therefore, courts accord "significant deference" to "a trial counsel's decision how to conduct cross examination," and "refus[e] to use perfect hindsight to criticize unsuccessful trial strategies." Eze v. Senkowski, 321 F.3d 110, 132 (2d Cir. 2003). "'[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and [a] court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken.'" Id. at 127 (quoting United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998)).

Here, Mr. Gonzalez has provided no basis for questioning the adequacy of his attorney's cross examination.   Certainly, the number of questions or the volume of transcript taken up with cross examination is no indicator of whether the inquiry was sufficient. How much time is occupied by cross examination will depend on such factors as the vulnerability of the witness and the tactics of

counsel, who may decide to focus on material inconsistencies and ignore minor ones.  Indeed, the most powerful cross examination is often the shortest.  The specific discrepancies that the petitioner has identified -- testimony about the lighting conditions in the apartment, what he was wearing when arrested, and whether the television was on when the police arrived (Pet. App. Brief at 28) -- were relevant primarily to Mr. Gonzalez's contention at the suppression hearing that he was an overnight guest entitled to challenge the constitutionality of the search.  At trial, however, his attorney made the strategic decision to focus on whether Mr. Gonzalez's statement to the police was voluntary and whether he understood it.  (Tr. at 250-51).  Accordingly, counsel cross examined the police witnesses about their alleged rough treatment of the petitioner (Tr. at 157-58, 173) and about the petitioner's facility with English.  (Tr. at 173-75, 209-10).  The "inconsistencies" that Mr. Gonzalez now cites would have been marginally relevant at best, and counsel's failure to explore them was therefore not prejudicial.

D. <u>Prosecutorial Misconduct</u>

Finally, Mr. Gonzalez contends that the prosecutor made improper comments during summation that denied him a fair trial. He complains, for example, about an argument that the assistant district attorney made in connection with the petitioner's assertion that one of the arresting officers punched him.  Another

officer present at the scene was the lieutenant responsible for
handling civilian complaints registered with the Port Jervis Police
Department. (Tr. at 238-39).   During summation, the prosecutor
relied on this fact in challenging Mr. Gonzalez's testimony about
having been struck:

> [P]ut yourself in the patrolmen or detectives' shoes;
> that is no way to collect your pension, hitting a suspect
> in front of the lieutenant who in your department handles
> civilian complaints.   You're not going to collect the
> pension because you're going to get fired or severely
> reprimanded right then and there.    It would be very
> foolish.   So I submit to you that that never happened,
> not because the police could never abuse a power, because
> we know that does happen, but there is no logical reason
> why that would have happened in this case.

(Tr. at 260).   According to the petitioner, these comments were
improper both because they constituted vouching for the prosecution
witnesses and because they were based on facts not contained in the
record, that is, the procedures that would be followed in the event
of police misconduct.   (Pet. Memo. at 15; Pet. App. Brief at 32-
33).

Similarly, Mr. Gonzalez objects to the prosecutor's statements
concerning his ability to speak and understand English.   This was
relevant to the petitioner's contention that his admissions were
involuntary and he did not understand the inculpatory statement
that he signed.   In summation, the prosecutor stated:

> [Y]ou heard Detective Myers and Worden both tell you they
> don't speak any Spanish but yet Detective Worden was able
> to secure a four page statement from the defendant.   Now,

> if Detective Worden, I submit to you for argument's sake,
> couldn't communicate with this man at all, he would have
> picked up the phone and he would have called another
> local police agency or the New York State Police and
> said, hey, I got a guy here we just got on a drug warrant
> case who doesn't speak any English, I need an officer who
> can speak Spanish and they would have found one.  There
> are a lot of police officers in this County that speak
> Spanish.

(Tr. at 262-63).  Again, Mr. Gonzalez contends that the prosecutor

introduced facts not admitted at trial, in this instance, facts

about the procedures for interviewing a Spanish-speaking suspect.

(Pet. Memo. at 16; Pet. App. Brief at 33-34).  Mr. Gonzalez also

contended on direct appeal that the prosecutor strayed beyond the

record in arguing that because the petitioner had worked as a

carpenter and a welder, he was necessarily able to communicate in

English.  (Tr. at 263-64; Pet. App. Brief at 34).

On appeal, Mr. Gonzalez further maintained that some of the

prosecutor's comments about his testimony were improper personal

attacks.  As an example, he cited the prosecutor's characterization

of his testimony that he did not understand his rights as "almost

absurd."  (Tr. at 261; Pet. App. Brief at 34-35).

Mr. Gonzalez's counsel did not object at trial to the

prosecutor's comments.  Accordingly, on appeal, the Appellate

Division found any claim of prosecutorial misconduct to be

unpreserved.  Gonzalez, 45 A.D.3d at 696-97, 845 N.Y.S.2d at 818.

The court further found that, even if any such claim had been

preserved, it was meritless.  Id. at 696-97, 845 N.Y.S.2d at 818.

A procedural default generally bars a federal court from reviewing the merits of a habeas claim.  Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977).  This rule is grounded in the principle that federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "'independent of the federal question and adequate to support the judgment.'"  Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  A state procedural bar qualifies as an "independent and adequate" state law ground if "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'"  Levine v. Commissioner of Correctional Services, 44 F.3d 121, 126 (2d Cir. 1995) (quoting Harris v. Reed, 489 U.S. 255, 263 (1989)).  Furthermore, a state procedural rule will generally be adequate to preclude habeas review if it is "'firmly established and regularly followed.'"  Lee v. Kemna, 534 U.S. 362, 376 (2002) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).

### 1. Contemporaneous Objection Rule

Under the contemporaneous objection rule contained in New York's Criminal Procedure Law ("CPL"), a claim is preserved for appeal only by a timely protest raised during trial.  CPL § 470.05(2).  As CPL § 470.05(2) is firmly established and regularly followed in New York, the failure to comply with it bars federal

review.  Garvey v. Duncan, 485 F.3d 709, 716, 718 (2d Cir. 2007);

see also Garcia v. Lewis, 188 F.3d 71, 78-79 (2d Cir. 1999);

Peterson v. Scully, 896 F.2d 661, 663 (2d Cir. 1990).

### 2. Reasonableness of Procedural Bar

Even if a state procedural bar is generally sufficient to

preclude review on the merits, a federal habeas court must still

determine if it was reasonably applied by the state courts in the

case at hand.  See Lee, 534 U.S. at 376.  The Second Circuit has

identified three guideposts for evaluating the reasonableness of a

state's application of a procedural bar:

> (1) whether the alleged procedural violation was actually
> relied on in the trial court, and whether perfect
> compliance with the state rule would have changed the
> trial court's decision; (2) whether state caselaw
> indicated that compliance with the rule was demanded in
> the specific circumstances presented; and (3) whether
> petitioner had "substantially complied" with the rule
> given "the realities of trial" . . . .

Cotto, 331 F.3d at 240 (citing Lee, 534 U.S. at 381-85).

The first prong of the test addresses whether compliance with

the state procedural rule would have made a difference in the trial

court's decision.  This factor provides little guidance when the

procedural bar at issue is a contemporaneous objection rule.  See

Clark v. Perez, 510 F.3d 382, 391 n.4 (2d Cir. 2008) ("The first

guidepost has no bearing here because the failure altogether to

raise an issue cannot be 'actually relied on' because no court has

been notified that the issue even exists.").  Had Mr. Gonzalez

objected to the prosecutor's summation, it is possible that Justice De Rosa would have sustained the objections and perhaps issued curative instructions to the jury. Thus, "it is at least conceivable" that Mr. Gonzalez could have effected a different outcome by complying with the contemporaneous objection rule. See Yara v. Ercole, 558 F. Supp. 2d 329, 337-38 (E.D.N.Y. 2008).

The second prong favors the prosecution here, since compliance with the rule was in fact mandated in this circumstance. New York law requires a specific, contemporaneous objection for an argument to be preserved for appellate review. See People v. Gray, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 175 (1995); see also Corchado v. Rabideau, 576 F. Supp. 2d 433, 454 n.5 (W.D.N.Y. 2008) ("New York takes a 'stringent' approach to the contemporaneous objection rule.").

Finally, it cannot be said that the petitioner substantially complied with the rule because he made no objection whatsoever at the time of the alleged errors. Therefore, the third prong of the test clearly favors the prosecution as well, and the procedural bar applies with full force in this case.

### 3.  Cause and Prejudice

A habeas petitioner can overcome a procedural bar if he is able to show just cause for the default and resulting prejudice. See Carmona v. United States Bureau of Prisons, 243 F.3d 629, 633 (2d Cir. 2001). A petitioner establishes cause if he can show that

"some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488; accord Coleman, 501 U.S. at 753.  Mr. Gonzalez has proffered no cause for failing to object at trial.  Since he has failed to show cause, I need not consider whether the refusal to consider his claim on the merits would cause him prejudice.  See McCleskey v. Zant, 499 U.S. 467, 502 (1991) (if petitioner is unable to show cause, a court need not consider prejudice).

### 4.  Miscarriage of Justice

Alternatively, a defaulted claim may be heard if the petitioner can show that "failure to consider [it] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. The Supreme Court has limited this exception to the "extraordinary" case where "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Murray, 477 U.S. at 496).  Mr. Gonzalez has made no showing that he is actually innocent and was wrongfully convicted as a result of the alleged prosecutorial misconduct.  Again, he has failed to overcome the procedural bar. Therefore, this claim is barred from habeas review.

### Conclusion

For the reasons set forth above, Mr. Gonzalez's petition for a writ of habeas corpus is denied.  As the petitioner has not made

a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c); Lucidore v. New York State Division of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000).

The Clerk of Court is respectfully requested to enter judgment accordingly and to close this case.

SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       March 18, 2010

Copies mailed this date:

Alfredo Gonzalez
02-A-6606
Fishkill Correctional Facility
P.O. Box 1245
Beacon, New York 12508

Andrew R. Kass, Esq.
Senior Assistant District Attorney
Office of the Orange County
     District Attorney
Orange County Government Center
Goshen, New York 10924-1627

28